Martin *v*. Dryden *et al*.

*Law* v. *Jackson*, 8 Cowen, 747; *Consaul* v. *Lidell*, 7 Missouri, 251.

A clerk out of office cannot amend a record made by him while clerk. *Hartwell* v. *Littleton*, 13 Pick. 229; *Taylor* v. *Henry*, 2 do. 402; *Wells* v. *Battelle*, 11 Mass. 481; *Acheson* v. *Western Reserve Bank*, 8 Ohio, 118.

The Judge must sign and seal the bill during the same term. *Givens* v. *Bradley*, 3 Bibb, 195. It must be taken within the time the statute allows. *Higbee* v. *Sutton*, 14 Verm. 555.

A party is not entitled to a *certiorari* after argument, or even after joinder in error. *Cheetham* v. *Tillotson*, 4 Johns. 509.


Motion allowed—*Lockwood, J.* dissenting.

*Motion allowed.*


JOHN T. MARTIN, impleaded with Charles A. Warfield, appellant, *v.* JOSHUA DRYDEN *et al.*, appellees.


*Appeal from Madison.*


A direct and positive denial in an answer to a bill in Chancery, responsive to an allegation therein, must be controverted by two witnesses, or one witness and strong corroborating circumstances, or by other proof equivalent.

It is a general rule, that the answer of one defendant is not evidence against his co-defendant; but it does not apply to cases, where the other defendant claims under him. This doctrine, however, is too general in its terms, as an exception to the general rule, for where one is nominally, not substantially, a defendant, and his interest is identified with the complainants, his answer cannot be used against a co-defendant.

It is, also, a general rule in Equity, that all persons in interest should join as plaintiffs, or be made defendants; and advantage may be taken of a want of proper parties, by demurrer to the bill, or at the hearing, or upon re-hearing, or upon appeal. But to this rule there are exceptions. Where the parties form a voluntary association, for public or private purposes, those who sue, or defend, may fairly be presumed to represent the rights and interests of the whole.

Where a question is purely cognizable in a Court of Law, but depending upon a discovery, the latter will give a Court of Equity jurisdiction, and, upon obtaining the discovery, Equity, having acquired jurisdiction, will retain the cause and proceed, and give full relief, without driving the party to a Court

of Law. But if the discovery is not obtained, the jurisdiction fails, and it cannot proceed, but must dismiss the parties to seek a remedy in a Court of Law.

Parties may try the strength of their legal titles in a suit at law; but where they seek, by bill, to remove all liens and incumbrances, if any, created by a proceeding in attachment, and so to quiet their title by a decree that it is a prior and better equity and legal estate, the Court of Equity then has jurisdiction.

A defendant in attachment, by appearance and pleading simply, cannot dissolve the attachment; this can only be effected by giving bond and security, as required by statute.

The proceeding by attachment is a proceeding *in rem*, and by constructive notice. Without a levy of the attachment, or the service of a garnishee, the Court has no jurisdiction to proceed, by publication of notice, to render any judgment. In case the property attached should be claimed by one, not a party to the record, under the provisions of the statute, and on trial of the issue, a verdict be found for such claimant, and there should be no garnishee, who should be found to be indebted, the jurisdiction of the Court would then fail. So, also, if there should be no attachment of property, but merely a service on a supposed garnishee, not indebted, the same result would follow.

An attachment is a lien from the date of the levy, when followed by a judgment, which relates back to it.

A *"creditor,"* within the meaning of the recording Acts of this State, is one who, without actual or constructive notice of a prior conveyance, or incumbrance, institutes such proceedings, or takes such steps, as effect a lien on land, before the recording of such conveyance, or incumbrance, whether the debt be prior, or subsequent to them, and whether the vendor, at the time of conveying or incumbering, had other property sufficient to pay the debt or not.

An attaching creditor, who levies his attachment without notice of the prior deed, either actual or constructive, acquires a lien, which, if perfected by judgment, execution, sale and deed, will hold the legal estate, as against the purchaser in the prior unrecorded deed; and that, too, although at the time of the levy of his execution, and sale, he had notice of the deed. Whatever he had acquired, as an innocent creditor without notice, he has a right to perfect and secure to himself, notwithstanding a subsequent notice.

BILL IN EQUITY in the Madison Circuit Court, brought by the appellees against the appellants. The cause was heard before the Hon. James Semple, at the May term 1843, and the relief prayed for in the bill was granted. A history of the case appears in the Opinion of the Court.

*O. H. Browning & N. Bushnell,* for the appellant, presented the following points and authorities.

I. The first objection to the right of the appellees to a decree is, that they have brought their case to the wrong forum.

Martin *v.* Dryden *et al.*

The only question really presented by the record for decision is, whether Martin, by his proceedings in attachment, can obtain a legal title to the premises as against the appellees. Assuming at this stage of the argument that he could, if his attachment was levied *bona fide*, and without notice of the appellees' claims, the whole question turns upon the fact of notice, or the want of it. The bill is for discovery as to that fact, and relief as a consequence of the discovery. Martin denies the notice, and the appellees attempt to prove it by other testimony.

Now, while it is admitted that when a Court of Chancery has once obtained jurisdiction of a cause for the purpose of discovery, it will, *if the discovery is had*, proceed to decree the appropriate relief; on the other hand, it is insisted, that if the discovery fails, the party will not be allowed to prove the case by other testimony, but the Court will dismiss the bill and send the party to the proper forum,—a Court of Law. Story's Eq. Pl. §§ 288, 311, 313, 473, 474, 476, 477; *Russell* v. *Clark's Ex.*, 2 Cond. R. 417, 422; *Looker* v. *Roue*, 3 Ves. 3, 4, 7; *Ryves* v. *Ryves*, Ib. 342.

The question of title between a grantee in an unrecorded deed and a subsequent attaching or judgment creditor, depending on the fact of notice is cognizable at law. *Warden* v. *Adams*, 15 Mass. 233; *McMecham* v. *Griffing*, 3 Pick. 149; *Cushing* v. *Hurd*, 4 do. 253; *Priest* v. *Rice*, 1 do. 168; *Jackson* v. *West*, 10 Johns. 466.

II. The appellees have shown no right to sue alone in this case; on the other hand, the bill itself shows that there are *twenty four* other persons equally interested in this suit.

It is a general rule, that all persons legally or beneficially interested in the subject matter of the suit, however numerous, must be made parties. Story's Eq. Pl. §§ 72, 74, 137, 138, 143; *Caldwell* v. *Taggart*, 4 Peters, 190, 202; *Wendell* v. *Rensellaer*, 1 Johns. Ch. R. 349. If they are not made parties, the defendant may either demur, or may insist on the objection at the hearing. Story's Eq. Pl. § 75. To this rule there are several exceptions. 1st. When the other parties are out of the jurisdiction of the Court. Ib. § 78.

But if this ground is relied on to excuse the bringing of a part of the parties interested before the Court, the fact must appear by direct averment, and not be left to inference. Ib. § 78, note. 2nd. Where the parties are so numerous as to make it inconvenient, and suit is brought by some in behalf of themselves and the others. Ib. §§ 95, 107, 110, 116, 118. But all the cases, where this exception has been allowed, show that hundreds, or thousands, were interested, and not merely a few, as in this case. · Neither of these exceptions will be allowed, where the interests of those not before the Court will be directly affected by the decree. Ib. §§ 81, 82, 84, 130, 131. 3d. Where in joint stock companies, whether incorporated or not, there are officers authorized to represent the interests of the Company.

In this case, the bill shows that there were no persons authorized to represent the company.

As between the partners, Warfield was alone authorized to hold the title to the real estate. He could sell and convey, not convey without sale, at his pleasure. The appellees, so far as appears from the record, were not authorized by the company to receive the title, nor has the company ever assented thereto. They have no *exclusive* equity in this case, but each member of the whole association has an equal equity. Nor have they a right to assume to act for the whole, and represent the whole *without their consent.* The effect of a decree in this case, in their absence, may be to place the property in hands into which, of all others, the other partners would not wish it to go.

Besides, the ground on which, when they are regularly constituted officers to represent a company, the individual members of the association need not be made parties, is, that such officers are the legal representatives of the whole, and that a decree against them will bind the whole. In the present case, the appellees have not been selected by the rest as their representatives, nor will a decree against them preclude the others from bringing a new action against Martin for the same cause.

III. Treating, for the present, the property in controversy

Martin *v.* Dryden *et al.*

as the property of Warfield in his own right, we then insist that Martin, by the levy of his attachment, acquired a lien on the property, and could hold subject to any judgment, which he might obtain in the suit; and that, when sold under the judgment, his title related back to the time of the levy, and took effect from that date. This position is fully sustained by all the authorities on the subject. 4 Kent's Com. (4th ed.) 435; *Tyrrel's Heirs* v. *Rountree*, 1 McLean, 95; S. C. 7 Peters, 464; *Wallace* v. *M'Connell*, 13 do. 151; *Goodwin* v. *Richardson*, 11 Mass. 475. *Pierson* v. *Robb*, 3 Scam. 143; *Welsh* v. *Joy*, 13 Pick. 477.

But it is alleged, that if this lien exists at all, it must do so by statute, and as a part of the argument it is then asserted that the statute is silent on the subject. To this we cannot assent. This lien, if not created by express words, is clearly deducible from the tenor and spirit of the statute. The proceeding is *in rem*. The Court, by its process, seizes the property itself, which, from the time of the seizure, is held *in custodia legis*, to answer the judgment of the Court. R. L. 82, §§ 1, 3, 4, 7, 8, 11, 12, 13; *Van Loan* v. *Kline*, 10 Johns. 129. Subsequent statutes have recognized the existence of this lien, and regulated the mode of preserving it. Laws of 1840, 181, §§ 1, 2. This alone is sufficient to sustain the lien, according to the principles already applied by this Court in the construction of the statute in relation to distress for rent. *Penny* v. *Little*, 3 Scam. 305, 306.

The authorities are numerous on the point, that where an attachment is levied, or judgment had, it will, in either case, take precedence of a prior unrecorded deed of which the attaching creditor had no notice at the time of the levy of his attachment. *Cushing* v. *Hurd*, 4 Pick. 253; *M'Mecham* v. *Griffing*, 3 do. 149; *Warden* v. *Adams*, 15 Mass. 233; *Porter* v. *Millett*, 9 do. 101; *Jackson* v. *Chamberlain*, 8 Wend. 650; *Same* v. *Post*, 15 do. 588. An attaching creditor is protected by our statute, which provides that a deed, until recorded, shall be void as to "all creditors." R. L. 587, § 5.

But it is urged by the appellees, that "creditor" means *judgment* creditor, and that, as Martin was not a judgment

creditor at the time of the record of the deed, he is not protected by our statute, and refer to several cases to establish the position. *Jackson* v. *Tothill,* 4 Johns. 216; *Same* v. *Terry,* 13 do. 471; *Robinson* v. *Rowan,* 2 Scam. 499. But these authorities so far from sustaining, directly overthrow his position. The New York cases show, that by the statutes of that State, neither judgment creditors, nor any other creditors, as such, were protected at all, but only *bona fide* purchasers and incumbrancers, the latter meaning those who were incumbrancers, technically speaking, by the act of the parties, and not by operation of law. It was, therefore, necessary for a creditor, in order to obtain the protection of the statute, not only to obtain judgment, but to purchase under that judgment, and procure his deed, and record it, before the recording of the prior deed, so as to become a *bona fide* purchaser within the meaning of the statute. This done, the statute protected him against a prior unregistered deed, not as a *judgment creditor,* but as a *bona fide* purchaser. *Jackson* v. *Chamberlain,* 8 Wend. 625, 626.

In the case referred to in 2 Scam. 499, this Court decided that the same was true under our statutes, previous to 1833; while they also say that, by the statute of 1833, *the lien of the judgment* will hold the land against a prior unrecorded deed. If, as we have seen, an attachment is a lien, then the judgment and all subsequent proceedings relate back to, and take effect from that date, and hold the land from that date against prior unrecorded deeds. Even a sale and purchase on execution, gives the purchaser no more than a lien during the time allowed for redemption. Ex parte *The Peru Iron Company,* 7 Cowen, 540, 554.

Creditors and *bona fide* purchasers are within the same protection of the statute. *Prescott* v. *Heard,* 10 Mass. 60; *Jackson* v. *Chamberlain,* 8 Wend. 620.

The question of a subsequent attaching creditor's right, as against a prior unrecorded deed, has always turned upon the question of notice, in the cases before referred to; this is true also, in the following cases. *Farnsworth* v. *Childs,* 4 Mass. 637; *Prescott* v. *Heard,* 10 do. 60.

But it is said that, even if it were admitted that the property was subject to attachment, and that the attachment was a lien, still Martin could attach no more than the real interest of Warfield in the premises.

1st.   On the supposition that Warfield was a partner, then Warfield had a right to dispose of the whole title; for it is a well settled rule, that real estate, acquired by partnership funds, and held by partners in common, may be conveyed, or charged by one partner on his private account to the extent of his legal interest, whether the legal title covers the whole, or a part of the estate, provided the purchaser dealt with him in good faith, and without notice of the partnership rights.   3 Kent's Com. 38; *Forde* v. *Herron,* 4 Munf. 316; *Randall* v. *Randall,* 7 Sim. 277; *Goodwin* v. *Richardson,* 11 Mass. 475.

2d.   Is Warfield to be considered as a trustee?

A trustee in possession may alienate the land, and a *bona fide* purchaser will not be affected by the trust.   3 Mass. 577, 578, Supplement; 1 Cruise's Dig. 489, § 10; *Frost* v. *Beekman,* 2 Johns. Ch. R. 288, 300.

Whenever a purchase or conveyance from a 'trustee is held void, it is always on the ground that the grantee had notice of the trust.   1 Story's Eq. Jur. §§ 395, 413; 4 Kent's Com. 307; 2 Fonblanque's Eq. 152, 153; *Murray* v. *Ballou,* 1 Johns. Ch. R. 575.

Even where a person has notice of the trust, he may, in many cases, purchase of the trustee, if he does not *know* that the trustee is violating the trust.   1 Story's Eq. Jur. 422.

Where one person allows another to assume the apparent ownership of property, and to remain in possession, and a third person afterwards purchases of the person acting as owner, the real owner cannot set up his title.   1 Story's Eq. Jur. §§ 384, 385, 389; *Wendell* v. *Van Rensellaer,* 1 Johns. Ch. R. 353, 354; *Storrs* v. *Barker,* 6 Johns. Ch. R. 166, 168, 169; *Tallcott* v. *Dudley,* 4 Scam. 438.

In point of fact, Warfield was not a partner, for the whole import of the agreement was, that he should hold the entire title, reserving a portion of the land, or of the proceeds, as a

*compensation*, and be accountable only for the *proceeds* after a sale. 3 Kent's Com. 34. Even if property is purchased with partnership funds, in the name of one partner, still the understanding that the estate should be his, and he be accountable for the money, the estate is his separate property. Gow on Partn. 34.

Nor was there a *resulting trust.* It is, in all respects as to this question, like the case below, in which it was fully considered what is necessary to make a resulting trust. *White* v. *Carpenter*, 2 Paige, 217, 233, *et sequente.*

If not a resulting trust, any trust by which the lands could be affected either in law or equity, at least as to third persons, must have been in *writing*. R. L. 314, § 4. Such writing must have been recorded to affect purchasers, or creditors. R. L. 135, § 15; Ib. 587, § 5.

So that, under a fair construction of our recording Act, whether the debtor was owner in his own right, or as trustee, any person claiming an interest therein as against creditors, must show a claim by writing, duly recorded. To say that a person, who, having once owned the fee simple in his own right, had conveyed it by deed not recorded, has an interest in it which can be attached, and that a person holding title with a real interest as to a part, and as trustee for the balance, and that not shown by a recorded writing, has no interest subject to a legal process, seems an absurdity.

*N. D. Strong & J. Hall*, on the same side:

Under the assignment of errors in this case the plaintiff's counsel insist,

I. That the complainants below show no right in themselves to prosecute this suit. Their bill of complaint contains no allegation of their representative character, at the same time that it does show a material interest of other persons, not parties to the suit. They establish therefore in themselves, no authority to prosecute the suit. 3 Barb. & Har. Dig. 81; 1 Smith's Ch. Prac. 92; 1 Mad. Ch. Prac. 176; *Caldwell* v. *Taggart*, 4 Peters, 190; *Colt* v. *Lasmer*, 9 Cowen 320.

Martin *v.* Dryden *et al.*

II. That independent of any claims set up by the complainants to the lands in controversy, the defendant in the attachment suit had an attachable interest in the same, that ought to have been saved. The bill shows that one fifth part of the lands belonged to Warfield, by the terms of agreement between him and the complainants, and if the attachment did not cover all the lands, it certainly was good as to this fifth.

III. The levy of the attachment in favor of appellant, against Warfield on the lands in controversy, prior to record of deed conveying same to complainants without notice thereof, or of the capacity in which Warfield held them, gave to appellant a paramount claim, lien or charge on the same.

That the attachment was levied prior to the record of the deed, and that the deed was executed prior to the levy, are facts not questioned.

These two points then remain to be determined.

1. Did the attachment, so levied without notice, give a prior claim or right in the lands to the appellant?

2. Does it appear that, at the time of such levy, the appellant had notice of complainants' interest in the lands?

On the first point, the appellant claims that if the attachment gave any right or claim whatever to the lands levied upon, it was a right or claim superior to that of an unrecorded deed without notice. R. L. 587, § 5. The operation of the law referred to is this; that an unrecorded deed so far as regards creditors and subsequent purchasers, without notice is no deed. As to them, its date is the date of its record. Its design is to protect against latent equities. The terms of the Act are strong, and it has received a construction. *Doyle* v. *Teas*, 4 Scam. 252; *Hubbard* v. *Turner*, 2 McLean.

The question then arises, what creditors are protected by this law? We say, generally, all such as have acquired rights that would be protected as against subsequent purchasers.

Of this class are attaching creditors.

The several provisions of the attachment Act, as the affidavit required to be made, the bond to be given, the command of the writ, the duty of the officer levying the same, and the

terms on which the property may be released, all show that
its obvious design is to give the creditor in certain cases, a
remedy whereby to obtain satisfaction for his debt. R. L.
81, Attachment Act, §§ 1, 5, 8, 12, 22. What is this rem-
edy? It is a lien or charge upon the lands, or it is nothing.
It is contended by the opposing counsel that the attachment
is no lien because there are no express words so creating it.
Is this necessary? What is a lien? 2 Tomlin's Law Dic.
445; 2 Bouvier's Law Dic. 43; 1 Story's Eq. Jur. 483; 2 do.
466. Taking it is as defined, what else is an attachment?
It is a necessary result from the several provisions of the Act,
that an attachment operates as a lien, else these provisions
are idle forms. It is a lien more to be favored than that of a
judgment, since this is special, and the latter general. But
liens are inferred. In Virginia, the statute does not make
judgments liens, but Courts have so construed the right to
sue out an elegit as to infer a lien. *Scriba* v. *Deanes*, 2
Brock. 170; *U. States* v. *Morrison*, 4 Peters, 124. Besides
there are terms in the Act equivalent to declaring that the
levy shall be a lien. See the command of the writ, the con-
dition of the delivery bond, &c.

Attachments are universally regarded as liens. The case
of Ex parte *Foster*, 5 Law Rep. 55, does not militate against
the position we contend for here, but on the contrary, sus-
tains the doctrine, so far as is necessary for our purpose.
Whether, then, the *whole law* be truly laid down in that case,
to the extent it is carried, is an inquiry not to be entered
into here. The naked proposition that attachments are liens,
is fully admitted in Ex parte *Foster*, and borne out by the
whole current of authorities. 5 Law Rep. 394; Ibid. 505; 6
do. 301; 7 do. 79; 2 Caines, 300, *McMechan* v. *Griffing*, 3
Pick. 149; *Priest* v. *Rice*, 1 Pick. 164; *Grosvenor* v. *Gold*,
9 Mass. 209; *Arnold* v. *Brown*, 24 Pick. 89, 95; *Conard* v.
*Atlantic Ins. Co.*, 1 Peters; *Smith* v. *Bradstreet*, 16 Pick. 254;
13 Peters, 151; *Coffin* v. *Ray*, 1 Metc. 212; 2 Aiken, 299; 4
Vermont, 88; 1 Day, 117, 136; 3 Fairf. 328; 6 N. Hamp. 459; 7
Greenl. 464; 8 Conn. 549; 4 Cowen, 441; 7 Johns. 376.

As to the second point. Had appellant notice, at time of

levy, of complainant's interest in the lands? The bill charges notice. The answer of Martin, which is responsive to the bill, expressly denies notice. Issue was taken, and the depositions establish no positive fact, disproving denial. As to the effect of the answer, see Story's Eq. 174. That Warfield's answer is no evidence against Martin, see 9 Cranch, 152; 2 Wheat. 380; *Webb* v. *Pell*, 3 Paige, 368; 3 Phil. Ev. (Cowen & Hill's Notes,) 936. Warfield's interest is identical with that of complainants below, and opposed to appellant. The case cited by opposing counsel is not in point. Martin claims not through Warfield in the sense there implied.

*A. Lincoln* and *J. M. Krum*, for the appellees:

The following is a portion of a printed argument, presented by John M. Krum, Esq., who contended,

1. That the decree is warranted from the case made by the pleadings, and the proofs in the cause.

2. That defendant, Martin, became the purchaser of the lands in controversy, *pendente lite*, and therefore purchased with full knowledge of the rights of the complainants.

3. That the attachment· of the defendant, Martin, gave him no *lien* on the lands in controversy.

4. That the title of the lands in question was in complainants, at the time of the levy of Martin's attachment, and his purchase at the sheriff's sale.

5. That the lands were discharged from the attachment by the *appearance and plea* of the defendant, Warfield, at the term to which said attachment was returnable.

6. Admitting an attachment of real estate to be a *quasi lien*, yet such attachment cannot be made to operate on more than the *actual legal* title or right of the defendant, in and to the lands seized.

Before entering into the consideration of the points made in behalf of the complainants, the question raised under the fifth error assigned, as to the right of the complainants to maintain their suit, will first be disposed of. The objection, *it is supposed*, is based on the ground that all the persons, materially interested in the *subject* of the suit, are not parties to

it. The general principle, that every person materially interested in the *subject of the suit,* should be joined in it, is not denied. *"Subject of suit,"* may mean either the *estate,* respecting which the question has arisen, or the *question* itself. Calvert on parties to suits in equity, 15 Law Lib. 6, 9; 3 Ves. 75; 16 do. 326, 1808. But a person only consequentially interested, need not be made a party. Calvert, 5. There is, also, another well established rule in regard to parties, viz: that although a person has an interest in the object of a suit, he need not be made a party, if he has a representative, &c. Story's Eq. Pl. 97, 135, 145, 414.

It is stated in the bill, that the "complainants sue in behalf of themselves and the subscribers," &c., of the said association, and it is apparent that the relief sought, is, in its nature beneficial to all whom the complainants undertook to represent. Calvert, 58; 13 Ves. 397, 526.

The complainants represent the interests of the *cestui que trust,* and this, from the nature of the trust, as shown by the bill; the latter, therefore, is not a necessary party. Story's Eq. Jur. 138; 2 Johns. Ch. R. 197; 11 Ves. 4, 29; 16 do. 321.

It seems clear, therefore, on principle, that the complainants, representing not only their own, but the interest of all the subscribers to the association, have an undoubted right to sue as they have done. But again, waiving the right of complainants to sue, on the principle of representation, the bill shows the legal title of the subject of the suit, to be in complainants. This title is sustained at the hearing, by the reading in evidence, (without objection on the part of Martin,) the deed of Warfield to complainants, by which the lands in controversy are absolutely conveyed to the complainants. On two grounds, therefore, is the objection met, and fully answered.

I. That the decree of the Court is supported by the record, there cannot exist a rational doubt. All the material allegations on the part of the complainants, on which a material issue depended, were substantially proved at the hearing. No objection appears to have been made, or exception taken to any part of the evidence. Every fact, and every con-

Martin *v.* Dryden *et al.*

clusion which the evidence conduced to prove, or which might reasonably be inferred, cannot now be called in question. If any objection existed as to the competency or legality of the testimony, the objection should have been made at the hearing. The defendant is now concluded. It was incumbent on the complainants to establish their title to, or interest in, the lands in question. *Secondly*, to show that the free and uninterrupted enjoyment of their right in the lands had been invaded by the defendants. The production of the deed from Warfield to complainants was sufficient to establish their right, title and interest in and to the property in controversy. This deed bears date, March 11, 1840. As between the complainants and Warfield, nothing further was necessary to perfect the complainants' right. The defendant, Martin, does not pretend that he had any title or interest in the property at the date of this deed—whatever claim or right Martin does set up, is of a date subsequent to the deed, and is derived from the same source, not by voluntary conveyance from Warfield, but by process of law. It cannot be contended that Martin, in virtue of his levy under his attachment, acquired any title or interest in the lands in controversy. The levy under the attachment gave no rights to Martin, which he could assert and maintain, either at law or in equity. In the most favorable view, it can only be said that Martin acquired the only tangible interest he has in the lands in question, by purchase at sheriff's sale, which was subsequent to the recording of the deed from Warfield to complainants, and subsequent to the filing of complainants' bill. But it may be said, that in the finding of the Court, as recited in the decree, certain facts are found as true, which finding is not warranted by the proofs in the case. Suppose such were the case, (which, however, is not admitted,) if there appear upon the record sufficient to sustain the decree, would the recital of a fact, not warranted by the proof, vitiate the final order of the Court? No one will contend for such an absurdity. The Court will now look through the whole record, and if sufficient appear to sustain the judgment of the Court below, no matter what is stated by way of recital, the decree, if in conformity to equity, will not be disturbed.

Again; *how* and *through whom*, does defendant, Martin, claim? Certainly, if any claim he has, it is derived through his co-defendant, Warfield. If Martin asserts no *right* or *title* in the lands in question, the matter is at an end—but if a *right* or *title* is set up, it becomes material to inquire *when*, *how*, *and through whom* his right or title is derived. Whether his right or title accrued at the date of the levy under his attachment, or at the date of the sheriff's sale, is not important, in the view now presented; it cannot be denied that *however*, or *whenever* his right or title *did accrue*, it is derived through his co-defendant, Warfield. If Martin claims as purchaser at sheriff's sale, I take it, he stands affected like any other purchaser. No difference exists between a purchaser at private sale and one at sheriff's sale. 2 Sug. on Ven. 254, 336; 9 Johns. 168; 10 do. 456; 2 Scam. 499.

This position leads to the consideration of an important point in the evidence in this case, viz: Is the answer of defendant, Warfield, evidence against his co-defendant, Martin?

It is true, the answer of one defendant in Chancery cannot, in general, be read in evidence against his co-defendant. But this rule does not apply to cases where the other defendant claims through him, whose answer is sought to be made evidence. 1 Greenl. Ev. 210; 6 Cranch, 8, 24; 1 Gall. 630, 635. The answer of Warfield is therefore competent evidence against his co-defendant. Applying this rule to the case at bar, the facts stated in Warfield's answer confirm in proof, beyond all doubt, every material allegation in the complainants' bill. No objection was made, nor exception taken at the hearing to the competency of this proof. The answer, of Warfield is in evidence, and it is now too late to question its competency. All objections to it are tacitly waived. The defendant, whose right it was to object to this evidence at the hearing, is now concluded by his silence.

II. The general principle, that all who claim as purchasers, *pendente lite*, though they are not parties to the suit, they and their interests, are nevertheless bound by the decree, is too well settled to be called in question. *Preston* v. *Tubbin*, 1 Vern. 286; 1 Johns. Ch. R. 565, 579.

The pendency of complainants' bill, at the time of Martin's

purchase at sheriff's sale, was notice to the world. It is a *lis pendens* as to him. The record shows that he had actual notice of complainants' rights, long before his purchase at sheriff's sale. If Martin sought to defend himself on the the ground that he is a *bona fide* purchaser for a valuable consideration, without notice, he was bound to deny every circumstance from which notice could be inferred. 2 Ves. jr. 458; 3 P. Wms. 244 n.; 1 Johns. Ch. R. 574. At law, the old rule was, that a purchase of land pending a suit concerning it, was *champerty;* and it is a maxim of the common law, that *pendente lite, nihil innovetur.*

No principle is better established, nor one founded on more indispensable necessity, than that the purchase of the subject matter in controversy, *pendente lite,* does not change the rights of the parties. 2 Johns. Ch. R. 441; 4 do. 46.

III. Had defendant, Martin, a lien on the lands in controversy in virtue of the levy made under his attachment? It is contended, on the part of the complainants, that a levy upon lands under an attachment, creates no lien, in the proper sense of the term.

1. Because the statute of Illinois, which authorizes the proceeding, does not declare such levy to be a lien. If a lien, it is so by statute. The proceeding by attachment being against common right, the statute and all proceedings and rights acquired thereby, will be construed *stricti juris.* 1 Scam. 476; 2 do. 17.

2. Because the manifest object of the statute is, to compel the appearance of a party in the jurisdiction where his property may be located. By the appearance of the defendant, the great object of the statute is sustained. The statute no where declares, that the real estate attached shall stand as security for the payment of the attaching creditor's debt, nor that such creditor shall have a lien.

It is essential to a lien at law, *first,* that the claimant should be in possession; *secondly,* that he should have some claim unsatisfied; *thirdly,* that he should have a right to hold until his claim shall be satisfied. 2 East, 227; 1 Story's Eq. Jur. 483.

3. Because the attaching creditor has no interest or estate whatever in the lands attached. 9 Mass. 104; Ib. 265, 112; 14 do. 217.

In some States, where attachments on mesne process are authorized, the statutes expressly provide that the property attached shall stand as security to satisfy whatever judgment &c. the creditor may recover; *vide* attachment law of Mass. The statute of Illinois has no such provision. For a full *expose* of the reasoning and authorities upon this question, the following references are made; Cushing's Trustee Process, 25, 47, 51. Story on Bail. 197, 204; but more particularly to the elaborate and discriminating opinion of Mr. Justice Story, in the matter of *John S. Foster*, in the Circuit Court of the United States, for Mass. reported in 5 Law Reporter, 55.

IV. The question, whether the lands seized under an attachment are discharged therefrom, on the appearance and pleading of the defendant at the return term of the attachment, is now probably for the first time raised in this Court.

The record shows that the action, in which the attachment against Warfield issued, was in assumpsit, to which at the return term of the process, the defendant entered his appearance and filed his plea of non assumpsit to the said account. Such appearance and plea, it is contended, under the provision of the 12th and 29th sections of the Act concerning Attachments, R. L. 87, 93, operates to discharge or liberate the defendant's estate from the attachment. By the 12th Sec. it is provided, that, "if the defendant (at the return term,) appear, put in sufficient bail and plead, &c., his estate so attached, shall be liberated," &c.

The twenty ninth section provides that "any defendant in an attachment may appear and plead, without giving any bail or entering into any bond."

It is conceded that the bail contemplated in the twelfth section means *special bail,* and of course in order to liberate the property attached in virtue of this section, it would be incumbent on a defendant to appear, give special bail and plead. But the 29th section has so far modified, or repealed the 12th, as to allow a defendant to release his property, by

Martin *v.* Dryden *et al.*

appearing and pleading to the action, without being required to "give bail, or enter into any bond." On the appearance, giving bail and pleading by the defendant, it is expressly declared by the twelfth section, "his estate so attached, shall be liberated." *Liberated,* in the common acceptation, discharged, released, from the attachment.

The 29th section does not change the effect of such appearance &c., but its provisions relieve the defendant from one of the conditions imposed by the twelfth section, a compliance with which, entitled the defendant to have his estate liberated.

There is a conflict between the two sections. If the well established rule of construing statutes is applied, the provisions of the twenty ninth section control what is inconsistent with them in the twelfth section. Bacon's Abr. title Stat.; 1 Kent's Com. 432-3. No good reason can be shown, in view of the *Act concerning attachments,* and the objects of its creation, why this rule of construction should not be applied to the case at bar. The construction contended for, is according to the letter of the law. In what does this construction conflict with the *spirit* of the law? If the process of attachment, authorized by statute, is resorted to, for the purpose of compelling the appearance of a debtor in a jurisdiction where his estate may be located, the main purpose and objects of the statute are attained, when the debtor submits himself to such jurisdiction by entering his appearance and pleading to such action. In the case at bar, the defendant in the attachment, at the return term thereof, (Aug. term 1840,) entered his appearance and filed his plea to the action. This is admitted upon the record. Now if the construction contended for be correct, then the effect of such appearance and plea is expressly declared by the statute itself, viz: that the debtor's "estate so attached shall be liberated."

If the estate was liberated from the attachment, it follows, that the defendant, Martin, has no lien on the land attached, even though a lien did exist in his favor prior to such appearance. The defendant in the attachment, pending that suit had full power to alien his title to the lands seized, and

the subsequent recovery of a judgment against him under the attachment created no lien on the lands. 9 Cowen, 121.

V. Whether the levy under the attachment be regarded as a lien proper, in the sense of that term, or merely a *quasi* lien from analogy, yet nothing more than the actual right, title or interest of the defendant in the lands in controversy could be seized under it.

This is not a question of superior diligence between creditors. The attaching creditor cannot put himself in a better position in regard to the lands attached, than the debtor himself occupied at the time of the levy. In short the creditor attaches the property of his debtor, the real, not the apparent interest, nothing more. The interest of Warfield in the lands in controversy, was so indefinite, uncertain and contingent, that there was nothing in fact on which the attachment could be levied. By the terms of the second section of the articles of the association, Warfield was to receive as compensation for his services, "one fourth of the net profits upon a sale of the property, &c." No sale had taken place; the net profits had not been ascertained.

Whatever sum of money might accrue to Warfield, on a sale, and ascertaining the net profits, the complainants would hold the same in trust for Warfield or his creditors. Such sum could not be seized under the attachment and reduced to the possession of the officer; at best, the amount could only be secured, by trustee or garnishee process.

The complainants and their associates, as to the lands in controversy, must be regarded as *quasi* tenants in common, and their rights, touching their common property, may be likened to the business, property, and liability of a co-partnership of several persons.

The partnership property must be applied to the partnership debts. The interest of the individual partners depends upon the ascertainment of the condition of the firm. The practical result, in this and all analagous cases is, that the actual interest only of the individual partner (or tenants in common) can be seized under an attachment. 2 P. Wms. 500; 3 do. 25, 182; 16 Johns. 102; Story on Partn. 373.

The right of the agent, under the second section of the articles of association, to have one fifth of the lands, depended upon the choice and election of such agent. It was the option of the agent to elect to take one fifth of the lands; his creditors could not make the election for him.

VI. It may be said, on the part of the defendant, that the deed from Warfield to complainants is void as to creditors, &c., in other words, that the deed took effect only from the time of filing the same for record. The provisions of the fifth section of the Act abolishing the office of State Recorder, R. L. 587, has reference to judgment creditors, and not creditors at large. The policy of the statute doubtless is, to compel the purchaser of land to record his deed, so that the vendor could not perpetrate a fraud by selling a second time. There must be a vigilance required of a purchaser. A purchaser could not be expected to know, nor possess the power to discover all the creditors of his vendor. Judgments are matters of record, public, and subject to the inspection of all. A judgment in fact is the best evidence of the existence of a debt. In law, and in the sense in which the term creditor is used in the act now under consideration, a judgment creditor only is contemplated. 9 Cowen, 120; 4 Johns 216; 13 do. 471; 2 Scam. 499.

The complainants, therefore, contend that their rights are not affected by the provisions of this statute. Martin was not a judgment creditor, nor did he acquire any right or title in the lands in controversy, prior to the recording of Warfield's deed to the complainants.

The Opinion of the Court was delivered by

SCATES, J.* The history of the case, as shown by the facts and the record, is this: In May, 1836, the defendants here, together with twenty five others, all residents in Baltimore, Maryland, entered into articles of co-partnership, by the name

---

* CATON, J. said: Being interested in one of the important questions decided in the case, I have thought proper to take no part in the deliberations, or decision of this case.

of the "Baltimore and Western Land Association," for the purpose of buying and selling, and speculating in lands in the State of Illinois and elsewhere, with a capital of $20,000. In the second article of the partnership agreement, they agree to employ an agent to visit the western States, and buy and sell land at his discretion, within the means furnished, taking the titles in his own name. He was to give bond and security for the performance of his duty; be subject to instructions from the treasurer of the Company; keep a journal of his doings, and make monthly returns thereof, and information. His expenses were to be borne out of the common fund, and he was to have one fourth of the net profits on sale, as a compensation, when the operation was finally concluded. Or, in case they dissolved within five years, the period of the partnership, or he should die before final settlement, he or his heirs might, at their option, take one fifth part of the lands upon a division. It was also agreed, that they might change the mode of doing business. Charles A. Warfield was appointed their agent, who made a purchase of the lands in controversy, among others, in his own name in 1836 and 1837, and with the Company's funds. On the 11th day of March, 1840, Warfield conveyed these lands to three members of the Company, Dryden, Gosnell and Wood, the complainants below, in trust for the Company, according to the articles of copartnership, which was duly acknowledged on the same day, before the Mayor of Baltimore, and recorded in Madison county, Illinois, on the 20th day of December, 1840.

The plaintiff, Martin, sued out an attachment against Warfield on the 14th day of July, 1840, and on the same day it was levied upon the lands in controversy. Warfield appeared and pleaded to the action, which was *assumpsit,* denying the debt. At the September term 1841, judgment was rendered for $1666·35, debt and cost, and on the 26th day of October, 1841, an execution issued on this judgment, under which these lands were sold to Martin.

This bill was filed by the defendants here, on behalf of themselves and the other members of the association, against Martin and Warfield, on the 6th day of September, 1841,

charging that Martin had notice of Warfield's agency in the purchase of these lands with the Company's funds, and that he, Warfield, held them in trust for them, at the time of issuing and levying the same, and that Warfield had no other interest than one fourth of the net profits. They aver that they sue on behalf of themselves and the other members of the Company, and pray that Martin may be enjoined from proceeding upon his attachment, and that all liens and incumbrances incident to, or growing out of it, upon and against these lands, may be removed and set aside.

Warfield answers, admitting every material charge in the bill, and charges that Martin had full notice and knowledge of all, before the attachment issued. Martin denies all notice and knowledge, in his answer. The cause was heard upon bill, answers, replication, exhibits and proofs. The Court found the facts as stated in this history, substantially, and that Martin purchased with full notice of defendants' interest, and that of the company, and thereupon decreed the relief prayed.

The plaintiff, Martin, assigns for error:

*First.* In finding that he had notice of that interest at the date of his attachment and levy.

*Second.* In discharging his lien, acquired by the attachment, judgment and sale under it.

*Third.* In not decreeing that one fifth part was subject to the attachment.

*Fourth.* In not denying the relief, and in not dismissing the bill.

*Fifth.* Complainants below show no right to prosecute this suit.

*Sixth.* A general assignment.

The notice charged in the bill, and directly and positively denied in the answer, is not proved in this case. A direct and positive denial in the answer, responsive to an allegation in the bill must be controverted by two witnesses, or one witness, and strong corroborating circumstances, or by other proof equivalent. Here, there is but one witness, who pretends,

with any certainty, to speak of a notice earlier than December, 1840. He speaks of conversations with Martin, and his recollection seems altogether confused as to the date, fixing a period of two years within which it may have taken place. The other witness seems to labor under a like confusion, or indistinctness of recollection, varying from the spring of 1840 to February, 1841; but seems strongly inclined to fix upon December, 1840, to February, 1841, as the period, within which the conversation took place. These vague recollections of the time when Martin should have admitted, in conversation, that he knew of the character of Warfield's agency and interest in said lands, is by no means sufficient to contradict the answer positively denying notice, at the issuing and levying his attachment on the 14th of July, 1840.

There seems to be a total misapprehension of counsel, as to facts found by the Court below, on this branch of the case. The first error assigned is, that the Court erred in finding that Martin had this notice at the *date* and *levy* of the attachment; but the recital in the decree is, that Martin had that notice before he purchased. This latter fact, we think, is clearly established by the proofs. For the sale under the attachment was made in October, or November, 1841, which was after the latest period fixed by the two witnesses, as the time when the conversation occurred with them, in which Martin spoke *of those facts as* known to him. The Court below seems to have proceeded upon the ground, that notice, at any time before the purchase under the execution, would fix upon the transaction the character of a purchase with notice. The counsel, in assigning the error, proceed upon the ground, that the notice must relate to the date and levy of the attachment. Of this branch of the subject I will speak, when I come to notice the subject of an attachment becoming a lien, and in connection with our recording Acts.

It is insisted, that the answer of the co-defendant, Warfield, under whom Martin claims, is evidence against Martin; and that Warfield admits notice expressly, and positively charges notice and a full knowledge upon Martin, before the date and levy of the attachment. The general rule is, that

the answer of one defendant is not evidence against his co-defendant. 1 Greenl. Ev. §178; 3 Phil. Ev. 931, note 650. But it is laid down that the rule does not apply to cases, where the other defendant claims under him. 1 Greenl. Ev. §178. This doctrine is too general in its terms, as an exception to the general rule. Where he is nominally, and not substantially, a defendant; where his interest is with the plaintiffs; their object, his object; where he, as well as the plaintiffs, is seeking to show that Martin acquired no lien, or rights under the attachment and proceedings at law; it shall not be in the power of the parties, in such a case, to avail themselves of the answer of Warfield, who appears in reality, though not in form, to be a plaintiff. 2 Cond. R. 290, 291. A better test to determine when such an answer would be evidence against a co-defendant claiming under him, or in the same right, as in case of partners, or successors, is an answer to the question, Would his admissions be evidence? Wherever the latter would be admissible, a fortiori, would his answer. 3 Phil. Ev. 930, note 648; 1 Greenl. Ev. §178; 2 Cond. R. 293, note; 1 Gall. 630. The plaintiffs below claim as partners of the defendant, Warfield, and could not offer his admissions, deposition, or answer, therefore, as evidence in this case against the plaintiff, Martin, who is seeking to sustain the proceedings subjecting his interest to a payment of a just debt. This answer will not, therefore, avail them as evidence to prove notice to Martin.

The next question I will notice is the one on the fifth assignment of error. The objection is for want of proper parties, plaintiffs. It is insisted that all the members of the firm ought to become plaintiffs. This is the general rule in equity, that all persons in interest should join as plaintiffs, or be made defendants. Story's Eq. Pl. § 72. It is said that advantage may be taken of a want of proper parties, by demurrer to the bill, or at the hearing, or upon re-hearing, or upon appeal. Ibid. § 75. Admitting that the question is raised in due time, I come to consider the exceptions to the general rule. Judge Story lays it down as an exception, where the parties form a voluntary association, for public or private

purposes, and those who sue or defend, may fairly be presumed to represent the rights and interests of the whole. Ibid. §§ 97, 107 to 115 inclusive. I am of opinion, that the plaintiffs below fall within this exception to the general rule. Here is a private association of some twenty eight individuals for the purpose of trade. The whole legal interest of the partnership in the subject matter of this suit has been transferred by deed to these complainants, who sue on behalf of the whole. The whole legal and equitable interest of the parties in the subject matter of this controversy, is fully represented by the complainants below, and a decree in the premises will bind all the members of the association.

Again, it is urged that this is a bill of discovery; that where the question is purely cognizable in a Court of Law, but depending upon a discovery, the latter will give a Court of Equity jurisdiction; and, upon obtaining the discovery, Equity, having acquired jurisdiction, will retain the cause, and proceed and give full relief without driving the party to a Court of Law. But if the discovery is not obtained, the jurisdiction fails, and it cannot proceed; but must dismiss the parties to seek a remedy in a Court of Law. These principles are correct, but they have no application to this case, as I do not regard it in any point of view as a bill of discovery. It is true, the parties might try the strength of their legal titles in a suit at law; but, by the bill, the complainants seek to remove all liens and incumbrances, if any, created by the attachment proceeding, and so, to quiet their title by a decree that it is a prior and better equity and legal estate. The Court, therefore, has jurisdiction.

The remaining errors assigned, I shall consider together. The only two questions of importance involved are, whether an attachment levied upon land, and afterwards pursued to judgment, execution and sale under it, is a lien upon the land from the date of the levy; and if so, whether it will take priority over, and defeat a prior unrecorded deed, executed by the defendant in the attachment, who held the legal estate as trustee, but without notice to the attaching creditor of the trust, or conveyance, until after the levy of the attachment.

Martin *v.* Dryden *et al.*

But before I proceed to the consideration of these questions, I will notice another ground, urged by the defendants here, and which is, that by the appearance and plea by Warfield, in the attachment suit, the property levied on was discharged from the attachment. For this effect, reliance is had upon the 29th section of the attachment law, (R. L. 93; Gale's Stat. 72,) which authorizes the defendant to appear and plead without giving bail, or entering into bond. But the same section further provides, that if defendant desires to replevy, he shall execute bond and security, that the property and credits attached shall be produced and delivered, subject to the judgment, and in that case, the attachment shall be dissolved; or a bond, that he will pay the amount of the judgment and cost, within ninety days after its rendition, will in like manner dissolve it. The eighth section directs the officer serving the attachment to take the property attached into his possession; and declares that the estate and property so attached shall remain in the care and safe keeping of the officer to answer and abide the judgment; unless bond and security be given to the officer, that the property and estate shall be forthcoming to answer the judgment. The ninth section provides, that when the defendant replevies, by giving bond and security, the officer shall return the bond; and if it be held insufficient, the sheriff shall be liable to the plaintiff for debt, interest and cost, and may have his remedy on the bond. The tenth section imposes a like liability upon the sheriff, in case he neglects to take a bond, when he ought to have done so; or shall fail to return one, upon a rule entered against him. The twelfth section provides how notice of the pendency of the suit shall be published; and if the defendant shall appear, put in sufficient bail, and plead, his estate shall be liberated and all garnishees discharged. The thirteenth section provides, that if there be no replevy, and judgment be rendered, the estate so attached may be sold upon an execution. The fifteenth section makes the garnishee liable for all that may be in his hands, at the time of the service of the attachment upon him.

I have set out the substance of these several provisions,

not only to show that the property attached is deemed and required to be in the custody of the law, unless replevied, to answer and satisfy the judgment, and notwithstanding an appearance and plea without bail; but also, because they contain the provisions relative to the question of a lien.

This is a proceeding *in rem,* and by constructive notice. Without a levy of the attachment, or the service of a garnishee, the Court has no jurisdiction to proceed, by publication of notice, to render any judgment. But, by the seizure of any estate or property of the defendant, or the service by garnishment upon any having estate, property, or effects of his in their hands, the law has laid hold of a fund, which it may condemn, and appropriate to the satisfaction of whatever judgment it may render against the defendant, and thereupon the Court proceeds to hear as to the indebtedness. By the tenth section of the Act, any other persons than the defendant, claiming the property may interplead without giving bail, but the property shall not thereby be replevied. The Court may immediately direct a jury to be called, to inquire into the right of property, and I apprehend that, should all the property attached, turn out to belong to such claimant, the Court would have no jurisdiction to proceed to judgment against the defendant, unless there were a service upon a garnishee; and not even then, if, upon trial, he should be found not indebted, and having no property in his hands. So essentially, then, in my opinion, does the jurisdiction and power of the Court, in this proceeding, depend upon having property, or effects of defendant under its control, that it cannot proceed without it. Having once seized them, it will not part with their control without bond and security, that its judgment shall be satisfied, notwithstanding defendant may put his person within its jurisdiction. Wherefore, all these safeguards to secure it; these strict liabilities of the sheriff to keep and have it forthcoming; and declaring it subject to satisfy the judgment of the Court, if the defendant may at any time before trial, simply by appearance and plea, dissolve the attachment, and discharge the property? If this should be the effect, the plaintiff would be in a worse condition

after having taken property thus to secure himself, than if he had commenced by *capias* against the person, for it would now be too late to take the person. Such is not the meaning of these provisions, nor the effect of an appearance and plea.

These remarks and views apply also to the question of lien. This specific appropriation of property must amount to something as to those who may deal in relation to it; else the defendant could, at any time before judgment, defeat the object of the party by a sale, and possibly, even the jurisdiction of the Court. We are of opinion, that the attachment is a lien from the date of the levy, when followed by a judgment, and which will have relation back to it. This doctrine is sanctioned by numerous authorities, which I will not review. *Coffin* v. *Ray*, 1 Metc. 212; *McMechan* v. *Griffing*, 3 Pick. 149; *Tyrrel's Heirs* v. *Rountree*, 7 Peters, 464; *Goodwin* v. *Richardson*, 11 Mass. 475; *Van Loan* v. *Kline*, 10 Johns. 129; *Penney* v. *Little*, 3 Scam. 305, 306; *Cushing* v. *Hurd*, 4 Pick. 253; *United States* v. *Canal Bank*, 7 Law Reporter, 87; *Downer* v. *Brackett*, 5 do. 393; *Haughton* v. *Eustis*, Ibid. 505.

I come now to speak of the recording Acts in their application to defendants' deed from Warfield. There are several on this subject, extending through a period of ten years in their enactment, and embracing in their provisions, grants, bargains, sales, leases, releases, mortgages, defeasances, conveyances, bonds, contracts, or agreements concerning lands, tenements, or hereditaments, whereby the same may be affected in law or equity. Gale's Stat. 132, § 15. Powers of attorney, or agency, for making or acknowledging the same. Ib. § 16. Assignments of Auditor's certificates of sales of land for taxes. Ib. 155, § 2. Assignments of certificates of purchase of school lands. Ib. 156, § 1. Sheriff's deeds of land sold on execution. Ib. 157, § 1. And all deeds, and title papers, of whatever description, for land. Ib. 663, § 2; all of which shall be recorded. They shall be recorded in the order of time in which they are brought into the recorder's office for that purpose. Ib. 556, §7. They shall be deemed notice to all subsequent purchasers and creditors, from the

date of their recording, whether acknowledged or not. Ib. 157, § 1. And they shall be in force, and take effect from and after the time of filing the same for record, and not before, as to all creditors, and subsequent *bona fide* purchasers, and mortgagees, without notice; and as to them, all such deeds and title papers, shall be adjudged void, until the same shall be filed for record in the county where the land may lie. Ib. 664, §5; Ib. 152, § 15.

The mischief intended to be provided against, is, not only the protection of honest purchasers, and mortgage incumbrancers, from imposition by secret and unknown conveyances and incumbrances, but also, for the protection of creditors, who, in giving credit, confide as much, and rely as confidently for the payment of their dues, upon the real estate to which their debtors appear, by the records, to have title, as upon the personalty in their actual possession; for by our laws, the realty is, equally with the personalty, liable to the payment of debts. The facilities for ascertaining who is owner, and upon that apparent ownership, determining who is entitled to credit, are not the only provisions for the protection of purchasers and creditors. It is declared to be an offence, and punished by confinement in the penitentiary, for one, without due authority, by personating another, to acknowledge or confess any fine, common recovery, deed, bond, power of attorney, mortgage, recognizance, bail or judgment, or to procure it to be done. Gale's Stat. 215, § 91. So, it is punishable by fine, if one become a party to any fraudulent conveyance of lands or goods, or become a party to any bond, suit, judgment, execution, contract or conveyance, with intent to defraud or deceive others, or to defeat, hinder or delay creditors, or others, of their just debts, damages, or demands. Ib. 225, § 141. So, in like manner, it is punishable by confinement in the penitentiary, to fraudulently sell, or make any contract to sell or barter lands or town lots, a second time, for valuable consideration, having sold them before. Ib. 226, § 144. These provisions are additional safeguards around the title, to protect purchasers from fraudulent second sales, overreaching their unrecorded deeds; and

creditors, from the fraudulent withdrawal, or incumbering their apparent fund. Creditors are a new class of persons introduced within the protection of the recording Acts, and we are bound to extend to them the benefit of that protection. But while we do so, we should be careful, and so apply the principles of law, as not to do greater mischief to purchasers and mortgagees, than benefit to creditors. To prevent it, it is all important to determine who are *creditors*, within the meaning of the recording Acts. If all are creditors, to whom the vendor, at the time of conveyance, is indebted, then indeed, might a slumbering creditor, years after an innocent purchaser had paid his money, taken possession, and perhaps expended much in improvements, by judgment and execution, upon his previously existing demand, overreach his title. This interpretation of *creditors* would do irreparable mischief, as purchasers have no sufficient and protective means of knowing to whom their vendor is indebted. This is inadmissible, being calculated to do more mischief than the recording Acts would otherwise prevent. Again, coming one step nearer; if all are creditors who have commenced an action for the recovery of a debt, insurmountable difficulties would be thrown in the way of selling and conveying land, as purchasers, &c., must first search the records of the various Courts for pending suits; and, when found, await the issue, to see if the vendor is condemned to a debt. This is also impracticable, and therefore inadmissible, as the meaning of the legislature, in using the word *"creditors."* Again, on the other hand, if none are creditors until they obtain judgment, execution, and make sale, and have the sheriff's deed recorded, then indeed, the term "creditor" has no meaning at all in that Act, for the debtor might even evade such a creditor, by an intermediate conveyance.

In Kentucky, it seems to me, the Court has approached the former extreme, in allowing a creditor, who obtained judgment in 1825, to overreach a deed recorded in 1820, which was intended as a mortgage, although absolute on its face; and where they do not put it upon the ground of fraud, or mention any particular statutory provision. *Graham* v.

*Samuel,* 1 Dana, 166. And again, that neither the creditor, nor a purchaser under his execution, would be affected by notice of an unrecorded deed. *Helm* v. *Logan's Heirs,* 4 Bibb, 78. Unless these decisions be put upon the peculiar phraseology, or provisions of their statute, they seem to me to go too far.

In New York, the Courts in several cases, seem to incline to the other extreme. In one case, it was held that a purchaser of a mortgagor, on a consideration of an existing debt, and without notice of the prior unrecorded mortgage, was not entitled to priority, unless he advanced some new consideration, other than the old debt. *Dickerson* v. *Tillinghast,* 4 Paige, 220. There is a dictum in *Jackson* v. *Chamberlain,* 8 Wend. 620, to the effect that the purchaser under the execution must have his deed recorded before the grantee of the judgment debtor, although he purchase without notice. The question did not arise in the case, as the deed under consideration was made before the registry Acts. But the doctrine is again laid down by the Court in *Jackson* v. *Post,* 15 Wend. 588, where a more liberal doctrine is adopted, but still, in this point of view, too narrow for our statute. In this last case, the Court treat an actual notice as sufficient, although the deed is unrecorded. Considering the object of the recording Acts to be intended as notice only, unless the language of the Act forbids, it is a sounder principle than that laid down in Kentucky. But in this case, the doctrine of actual notice has been carried too far; so far as to overreach, in effect, an innocent purchaser without notice, and so deny any protection under the statute. The fact did not appear in the record, that the purchaser under the execution had actual notice; but the deed of the previous grantee of the judgment debtor was recorded, before any conveyance was made by the purchaser under the execution, and it was held, that the subsequent purchasers of the execution purchaser had, by that means, notice to put them upon inquiry, by which they would have found that the estate had passed out of the judgment debtor, before the sale on the execution. Now, if one purchaser, without notice, and all subsequent purchasers

of his title are not protected under, and shielded by his want of notice, although they may have it, at the time of their subsequent purchase, then indeed, as I think, the first purchaser without notice would not be protected, as he would be liable on his covenant of title to his vendee, and so virtually lose his title. In *Jackson* v. *Terry,* 13 Johns. 471, the Court put the priority of right upon the priority of recording of a sheriff's deed made on a sale under execution, as between the purchaser and mortgagee, the language of their statute being, that no mortgage, nor any deed, conveyance or writing in the nature of a mortgage shall defeat or prejudice the title or interest of any *bona fide* purchaser, unless the same shall have been duly registered. The judgment there is a lien from the time of filing the record of judgment. *Waterman* v. *Haskin,* 11 Johns. 230. Still, the priority is to be gained by priority of registering of sheriff's deed, as to constructive notice; but may still be defeated by actual notice, without registering. *Jackson* v. *Chamberlain,* 8 Wend. 626, 627; *Same* v. *Terry,* 13 Johns. 471; *Same* v. *Post,* 15 Wend. 594; *Tuttle* v. *Jackson,* 6 Wend. 226. This much will suffice to show the rules applied by the New York Courts. But I apprehend they would not be, in some respects, a safe exposition of our statute, nor do I think the Kentucky rule would be any better.

The safest and best rule is laid down in Massachusetts, and the application of that rule would, in my judgment, best answer the inquiry, Who is a creditor, in the meaning of our recording Acts? He is one who, without actual or constructive notice of a prior conveyance or incumbrance, institutes such proceedings, or takes such steps, as effect a lien on the land, before the recording of such conveyance or incumbrance, whether the debt be prior or subsequent to them, and whether the vendor, at the time of conveying or incumbering, had other property sufficient to pay the debt or not. This interpretation of the statute will give meaning and efficacy to the term " creditors;" and while it would protect them to the same extent as others, it will prevent the irreparable mischief of allowing unknown and undiscoverable

Martin *v.* Dryden *et al.*

debts from overreaching the innocent, *bona fide* purchaser. Again, on the other hand, if none are "creditors" until they have obtained judgment, execution, and recorded the sheriff's deed, the statute would afford very little protection, as they might be constantly anticipated, and defeated. If none are "creditors," who, subsequent to the conveyance, give credit upon the fair title on the records, and open possession of the property, many would be deceived and defrauded, upon finding the fund to which they looked, secretly in the ownership of another. If none were creditors but those who made advances subsequent to the conveyance, &c., no one would know when to suspend his credits, for fear of a junior conveyance cutting off the merit of his consideration and claim.

None of these various constructions would be a just and convenient rule, except the one I have proposed. It seems to me to accord well with justice to creditors, and the doctrine of liens. The title, when perfected by sale on the execution, and recording of the sheriff's deed, will have relation back to the levy of the attachment, or rendition of the judgment, or both, in suits by attachment. An attaching creditor, therefore, who levies his attachment without notice of the prior deed, either actual or constructive, acquires a lien, which, if perfected by judgment, execution, sale and deed, will hold the legal estate, as against the purchaser in the prior unrecorded deed. *Cushing* v. *Hurd*, 4 Pick. 252; *McMechan* v. *Griffing*, 3 do. 149; *Coffin* v. *Ray*, 1 Metc. 212; *Sigourney* v. *Larned*, 10 Pick. 72; *Tyrrel's Heirs* v. *Rountree*, 7 Peters, 464; *Goodwin* v. *Richardson*, 11 Mass. 475. And that, too, although at the time of the levy of his execution, and sale, he had notice of the deed. *Coffin* v. *Ray*, 1 Metc. 214.

In the case before us, Warfield was the legal owner, by purchase from the Government, of the fee. But there was, according to the terms of the association, a resulting trust, in equity, to the defendants and their associates. Neither the power of attorney, if any, nor the deed to the association, were recorded to inform creditors or purchasers of Warfield, of the true interest. He was the ostensible, legal owner, and

Martin *v.* Dryden *et al.*

as such, strangers had a right to deal with him, until notified of the resulting trust. It is a fair and legal presumption, that Martin dealt with, and credited him, upon the faith, that these lands were his, and would be liable to the payment of his debt; and to make them available, sued out and levied his attachment, without notice, that Warfield had pre-conveyed the lands to the defendants. They then, notify him of their deed, by recording it, and seek by bill, to enjoin further proceedings to perfect his lien, and acquire title. But we are of opinion, that it is too late. Whatever he had acquired as an innocent creditor without notice, he had a right to perfect and secure to himself, notwithstanding the subsequent notice; for the statute has declared all such conveyances *void* as to creditors without notice, until the filing for record. So that, the deed being void as to him, he could, in no wise, be made to lose the benefit of his lien, upon the *supposition*, or principle, that the title and estate had passed out of Warfield at the time of levy. We impute no fraud or wrong, to any party concerned, but the defendants must take the fruits of their negligence in not recording their deed, so as to prevent imposition, however innocent they might be, upon others. I would simply remark further, that the case in 2 Scam. 499, arose, and was decided upon different provisions than those upon which we base this decision.

The decree of the Circuit Court will be reversed with costs, and the complainants' bill be dismissed, and defendant, Martin, will recover his costs.

*Decree reversed.*